All right. Is it Mr. Kluge? Yes, Your Honor. Mr. Kluge, you have the floor. Thank you. You've reserved two minutes for rebuttal. You may proceed when you're ready. Thank you. May it please the court. The issue that is of most legal importance, I think, in this case relates to the application of the Keesor v. Wilkie decision to how guideline commentary relates to guidelines in the sentencing, federal sentencing guidelines. And essentially this court... Before we get to that, I think you do have to, if I may take you out of order, you have to address the appeal waiver. Because we don't get to that if we think the appeal waiver is valid and applies, right? That's correct. The appeal waiver was relatively specific in that the only time it addressed sentencing, the written appeal waiver, the only time it addressed sentencing it said it applied to everything that is covered by the guidelines and would not be foreclosed by matters that were not covered by the guidelines. Or at least that is a reasonable way to read that provision, which is the third, I believe the third semicolon component of the clause of that appeal waiver. And that is how we have read it. Because this is the litigated sentencing guideline issue that was carved out of the agreed stipulations. It wasn't stipulated to. Yes. And for that reason it was the one that was litigated at sentencing and for that reason we're raising it on appeal. I suppose you could look at it that way or you could look at it as you agreed that it didn't apply. If it were to be looked at that way then I think you would look to how the district court interpreted it. And the district court certainly did not read it that way. The district court heard argument on its application. Absolutely. And didn't conclude you were in breach of the agreement. Right. And the government made a vague argument but did not come out and say, oh no, this is waived. They said it's inapposite. And I think that is sort of that vague merits, non-merits kind of argument. Well, the district court wouldn't be dealing with the appeal waiver, right? No. The district court deals with what the, by law, what the accurate calculation of the guideline is. And you made an argument that there's a reduction for acceptance. Right. And the point is that the there's no, at no point in the, there's only one point in this waiver that refers to a sentencing appeal waiver. And that is to say that the matters that are agreed to under the guideline, issues that have been agreed to cannot be appealed, but that does not foreclose matters that have not been agreed to. And it's arguably vague, but any vagueness certainly would endure to the benefit of the I'd like to understand the argument for the reading of that. I'm looking at the agreement which the government includes in its brief. So on page seven of the agreement, that the defendant will not file a direct appeal, nor bring a collateral challenge, including but not limited to, et cetera, et cetera, et cetera, or seek modification of any sentence below the stipulated guideline range of life imprisonment. So how do I read that not to cover this? I read the language to specifically relate to the unagreed to matters would be still subject to appeal. If you could walk me through that reading, I'd appreciate it. First says, shall not file a direct appeal. Second, nor seek, nor bring a collateral action. Third, nor seek a sentence modification. And furthermore, it's the furthermore paragraph, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this prohibition will be limited to that portion of the sentencing calculation that is inconsistent with or not addressed by the above stipulation. That language to me is at a minimum vague and suggests again that issues that are not covered by the plea agreement could be appealed. And certainly that was... Let me just ask this. So if the stipulation as these typically are read to preclude a challenge to any If your client were sentenced to life, it wouldn't... That next provision would be relevant, wouldn't it? If the next sentence... The sentence that you focused on with furthermore, it's agreed that any appeal that's not foreclosed by this provision. Certainly a life sentence isn't foreclosed by that provision. Right. And it's not a matter of... This is one of the rare cases. Usually a sentence above the statutory maximum is not... Is still appealable. But here the statutory maximum was life and the guidelines were life. No. A sentence above the stipulated the top of the stipulated guideline range is what's typically appealable. And what everybody's agreeing to is that a sentence below the stipulated guideline range is not appealable. Right. Because the stipulated guideline range was the statutory maximum. I see them as perfectly... Again, we're talking about something that was in no way explained to the defendant of the plea agreement. And language that appears to me to carve out, unappeal possibility for... Yes. Yes, Your Honor. Counsel, we have held again and again that serious errors in the statute, changes in the Why on earth did your particular narrow argument be far less than all the things we have any number of times held our way? Well, again, we did not draft this plea agreement. The defense didn't. The government chose to draft the agreement. The government chose to make this... Have this carve out. The government is now taking the position that the carve out doesn't apply. We feel that it does apply. There's certainly... I don't know of any precedent in this court which suggests that language like this bars an appeal of the carve out. So we feel we're clearly in the correct posture in this matter. It was heard on the merits. It was separated out from the plea agreement. The first, again... But the ability to argue it to the district court is in all ways a separate question from the scope of the appeal waiver. Would you agree with that? As a contractual matter. It is usually. In this case I would say it is not. In this case I think they merged. And I think that's what this language would reasonably lead a defendant to believe. Particularly that's given the language used by the district court that this was a separate matter. This was a carve out. And it was the only carve out. It was the unique carve out. And the specific language of the guidelines allowed the government to make narrow arguments. We've also argued that the government breached the plea agreement. Because if you read the agreement literally, it says that the government will only argue against 3E1.1, acceptance of responsibility, if subsequent conduct of the defendant applies or could easily be read that way. This is a situation where waivers of such fundamental rights should not be lightly imposed. And in this context we feel that it is not applicable. Can I ask just again, focusing on the text of the agreement. I'm looking at the language you say. Furthermore it's agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision. So tell me how to read the language above that in such a way that a challenge of a sentence below life is not foreclosed by that provision. First you start the language above does not say anything about a sentence appeal waiver. It talks about a direct appeal. Which presumably relates to 1291. Well it depends on whether what happens after each of the colons is modified by the final clause of any sentence below the stipulated guideline range. It's true. But again we have to look at all of these things in terms of who drafts them. The first language is you've waived any right to direct appeal. The district court did correctly advise that that wasn't true. So we begin with a misnomer. And why wasn't it true? It certainly could have appealed the conviction and we have appealed the conviction. So he did not waive direct appeal. They used improper language to begin. They didn't reference the statute. But that would be true if it were modified by, right it's true that you can't bring a direct appeal nor seek a sentence modification of any sentence below the stipulated guideline range. Well again there's three parts of the semicolons. Then there's another sentence. Again part from the appeal waiver part. Then there's a sentence that is a separate sentence about the life sentence. Which again is to me sort of a half way nonsense phrase. This provision is binding upon the parties even if the court employs a guideline analysis different from the stipulation to peer in. But again I'm not. But that's totally standard. You stipulate to a guideline range. You waive appeal of a sentence below the stipulated guideline range. Even if the court and the court warned here as district courts do that that guideline range may not be the guideline range that I conclude applies. But the sentence itself is again criminal cases. You know the one party who's not good at writing contracts is put in the position of trying to explain this contract. The government wasn't waiving anything here. It says that the government's waiving anything. They're not. This is contradictory of what their position is. They said that they could appeal if you got a low enough sentence. So this sentence is actually contradictory and not true. That did begin with that. And then you go to the one sentence in this thing that talks about sentence appeals and it suggests that the defendant can appeal matters that are not covered by the guideline stipulations. And there's nothing contrary to that in the plea colloquy or otherwise in the plea agreement. It comes up first. Do you agree a life sentence would be not covered by the guideline stipulation? A life sentence. He's exposed to a life sentence. And had there not been a guideline error, a life sentence could not be appealed. That's how I read it. You're not saying it couldn't be appealed as a result of the waiver. You're just saying it wouldn't prevail on appeal if I understand that right. No. The only thing that seems to be carved out in this agreement is guideline errors that are not covered by the guideline stipulation. Thank you, Counsel. You do have two minutes reserved for rebuttal. We'll hear from the government. Mr. Richman. Good morning, Your Honor. May it please the Court, my name is Jason Richman. I'm an Assistant United States Attorney here in the Southern District of New York. I represent the United States on appeal and I represented the United States in many of the proceedings below. As Judge Nathan's question just got at, this argument is squarely foreclosed by the plea agreement. The defendant was apprised of the terms, the relevant terms of the plea agreement in pleading guilty. This Court has repeatedly upheld plea agreements and plea waivers in circumstances potentially much more drastic than this one. The defendant does nothing, the appellant does nothing to counter that argument. And the appeal should be denied. Beyond that, absent questions from the Court, the government would primarily rest on its brief. The venue argument, I suppose, technically is not covered by the appeal waiver, it's covered by the plea. That is correct, Your Honor. It's waived as a result of having pled guilty. It's a non-jurisdictional defense. The District Court isn't required to inform at the Rule 11 Conference of every available defense. That's the nature of the argument. That's exactly right, Your Honor. All right. Thank you, Mr. Richman. Thank you, Your Honor. Mr. Kluge, you have two minutes on your part. With regard to the venue argument, we've argued that it was plain error. Once it is made part of a plea by the District Court, the District Court, in all sui sponte, wanted to establish, in order whether to accept the plea, whether there was venue for the offense. The government made an argument that is inconsistent with the statute and thus the factual basis was insufficient. The concept here is very important. We're not talking about a case, even assuming the law were as the government describes it, that some unindicted co-conspirator in a transaction could bring any other person who's a witness with anything in any way. This is a case in which the conspiracy concept is one of these grandiose conspiracy notions of the Sinaloa cartel, that somebody's doing something to aid the Sinaloa cartel. Under the government's theory, they could bring in basically every drug dealer in Central America and from Panama to Mexico. Because of this kind of vague theory, there are co-conspirators. What's the co-conspiracy here? Well, he helped somebody with an airstrip that was used by the Sinaloa cartel. That is the type of, that suggests that the statutory reading that we have argued for with regard to 3238 is a much more reasonable one, which you have to look at the actual function of the venue statute, which is to look at who's indicted in the case. And so the venue is, okay, we've indicted this group, we prosecuted, we brought some of these people in first, we can bring the other person in. And so let me get you with my main problem. I agree with everything you said. Any number of mistakes might have been made, but you sat there at trial, did not make any objections. And then afterwards you say, oh, by the way, these were done wrong, even though we agree. That's just a way of trying to play the court. If you wanted to say something and there was something wrong, there was plenty of time to do it. One of those cases in which plain error is most powerful. Your Honor, certainly with regard to the 3E1.1 error, we fully preserved it, we briefed it multiple times, we argued it at the court, we harmonized the guideline and the commentary. And that way of harmonizing is somewhat akin to what the government suggested, which is you look at it as a statistical view and take the word extraordinary to mean it has no persuasive effect on anybody. It's just a comment that it would be extraordinary if someone who previously committed obstruction clearly accepted responsibility, but that it does not push anybody, much less foreclose anybody from the guideline. We think under Keysore that is the only way to read that commentary at this point. With regard to the venue, it was a sua sponte matter raised and so we were not prepared for it. We didn't anticipate it in advance. We appreciated Judge Cardiff going into it. We just don't appreciate the answer. Thank you very much.